Mr. Ness, good morning. Nice to see you again. Thank you, Judge Dallman. I appreciate the opportunity to be here. Whenever you're ready. Okay. Your Honors, this case involves an issue, a question that's received increasingly frequent attention from this court. It also involves issues of constitutional significance. In this case, the district court imposed a condition of supervised release that prohibited my client, Mr. Last Star, from using or possessing any pornographic, sexually oriented, or sexually stimulating materials. That condition was interpreted by the district court to prohibit someone, Mr. Last Star in this case, from watching or possession of any R-rated movie that contains any sort of... Was that it? I thought Judge Haddon went out of his way to explain he wasn't focusing so much on the definition of pornographic materials. What concerned the district court was that these particular videos, based on the testimony of therapist Bowman, were sexually stimulating. And that really doesn't depend on a determination that it's pornographic. It becomes a trigger for a convicted sex offender to... What was the phrase? Trigger the cycle of deviance? Is that a fair characterization of her testimony? Well... Did I misunderstand the facts? No, no. I think you understood the facts. I think one of the real concerns here is we were kind of... The judge did say, well, this has nothing to do with pornography. Originally, when he was terminated from sex offender treatment, the letter that was written by Ms. Bowman specifically says he's being terminated because, A, he possessed pornography, and, B, he denied that they were pornographic because he argued with the probation officer and said, I don't think these are pornography. I bought them at a regular video store. But didn't the probation officer's violation report allege a violation on all three bases that the videos... He was terminated because he possessed pornographic, sexually stimulating, or I forget what the third phrase is. I should have it in front of me here. Which was, in fact, a term and condition of his supervised release. And at the revocation hearing, evidence was adduced through the testimony of therapist Bowman that these materials, in fact, met more than just the definition of pornography for purposes of a sexual offender. You know, Ms. Bowman also testified that Sports Illustrated Magazine swimsuit... Mr. Neff, you're not answering my question. It's either a yes or no answer. Isn't that what Ms. Bowman said? Well, and she went on to talk about they were questionable. As I recall, she was going off of her contract, and her contract talked about pornographic and or things that are questionable. But doesn't questionable in the context of this case mean materials that could trigger a deviant behavior by Mr. Lone Star because he finds them to be sexually exciting or stimulating, and that then starts this slide down the deviancy path? Isn't that the concern here? That was her concern. This is not a first-year constitutional law class where we're trying to determine whether or not Ms. March or March Girls Gone Wild or whatever is obscene. That's not the issue. The issue is whether or not the district court can impose a condition that says you've got to enter and successfully complete a sexual offender treatment program for a guy who's molested eight-year-old children and is living in a trailer next door to three other children under the age of 10 and is found in possession of stimulating materials that may, in fact, lead him to act out and do bad things again. That, I think, is what was troubling the district court as I read the transcript of the hearing. Well, he's a convicted felon, but he didn't lose all of his First Amendment freedoms. And the point is how far can you go in allowing a sex offender counselor who's standing in the shoes of the probation officer to make these determinations as to whether or not the videos were sexually enticing or sexually stimulating? But isn't the whole point of the group therapy, and I thought Ms. Baumann tried to explain it, these offenders sit around and they talk about avoiding the kinds of things that are going to trigger a repeat of deviant behavior. And so you can't go to strip joints and you can't go to pornographic movies and you can't basically possess materials that are going to get you thinking about engaging in deviant behavior. And that's where the danger comes from, from these particular videotapes. Not as to whether or not they're obscene or pornographic. But again, even the examples you just used, Judge Tallman, you talked about strip joints and you did talk about pornographic. She's taking two R-rated movies that, by the way, I cited a number of movie reviews. If you read them, the reviewers didn't consider these to be sexual. Suppose he'd gone to a strip club. I don't know if Montana has them. In Washington, if alcohol is served, you cannot have full nudity. So let's assume that you've got a woman pole dancing in a G-string, topless, which I assume is basically, as I understood the record, is what these movies revealed of Miss March or March Girls Gone Crazy or whatever the title was. Would your position be that he has every right to go into the strip joint even though the therapist says, we don't want him anywhere near partially unclothed women because it's going to get him thinking about doing bad things? But so would Vogue magazine, right? So would Vogue magazine. And I was actually going to use Harper's magazine. The magazine has great articles in it. The advertisements are... Isn't the better argument from your standpoint is that the standard has to be clear and the standard based on these terms is not clear? For example, what's meant by sexually oriented? Right. That's my primary position here is that these conditions were vague. And certainly vague is applied. I mean, they're just not clear enough to lead someone to believe that renting an R-rated movie, like Brokeback Mountain, for example, received a great deal of attention, had nudity, had sexual content. Someone wants to watch that. That would lead to revocation of his release and put him in prison. What do we do with the response to the probation officer's unannounced home visit when the probation officer pulls out the first tape from the video player and then says, do you have any other questionable materials? And he voluntarily produces from his collection the second video that the counselor found troubling. Is your position based on the vagueness of the condition that he couldn't know what the probation officer was asking him for when he voluntarily produced it? I don't know exactly what the probation officer's words were to him. And I don't think that was made clear in the hearing. But also the testimony from everybody there was that he argued with the probation officer and said, these are not pornographic. These are not the materials that should get me into trouble. And, in fact, that's one of the reasons that Ms. Bauman cited for terminating him from sex offender treatment was because he denied they were pornographic. Do you want to? I'll resign. Okay, very good. Let's hear from the governor. Good morning, Your Honors. Ryan Weldon appearing on behalf of the United States. I wanted to start with where Mr. Ness left off about the pornographic component of the condition. I think that the court is very much aware that when Judge Haddon reviewed this particular condition and applied it to Mr. Lastar, he omitted the term pornography or the pornographic material. And so I think that whether or not Crazy Girls or Miss March qualifies as pornography might be an interesting issue. It doesn't really apply to this case, though. We approved a similar provision to this one in the United States v. Reardon, didn't we? Your Honor, I believe that the case, at least that I cited to you, was the B case, where there was the sexually stimulating or sexually oriented. Are you familiar with the United States v. Reardon? Yes. It's a 2003 case. Yes, Your Honor, and I believe it was. And it was a similar provision, wasn't it? I believe it was, yes, Your Honor. With one difference. Yes. What was it? And that was the term pornography. Well, it cross-referenced 18 U.S.C. 2256-2, right? Yes, Your Honor. Was that done here? No, that was not done here. Shouldn't we at least remand to have that done? Well, on this particular case, Your Honor, what we had was a situation, and I think that that goes to, first of all, under any definition of sexually stimulating and sexually oriented, Miss March and Crazy Girls qualifies. And I think that the district court found that it would be unreasonable for any other definition to apply. So I don't think that a remand to apply with that particular provision is required in any way. That would be the government's position. The question is whether it gives an individual proper notice. I mean, under the general theory that was applied here today, if Lastar had driven by a billboard that had a bikini-clad woman on it, that would be sexually stimulating, wouldn't it? But he wouldn't be in possession of it, so that wouldn't violate the condition. What we have here is we have actually – He stopped off at the local Circle K and bought a copy of Vogue magazine. Would that do it? And, Your Honor, I think that that goes into our – I'm going to do exactly what my colleague did. I'll ask for a yes or no. That might qualify, but I don't think it applies in this case, and that is because of the procedural posture that we're here. So we have facial challenges where somebody has to object to that condition when sentence is imposed. Here we're up on an as-applied. So I can think of probably many different hypotheticals that we could discuss about it, but for this particular case, we are only talking about mismatch and crazy girls. Was Reardon cited to Judge Haddon when these conditions were imposed? I don't believe it was, Your Honor. I don't think it was. The case was available, wasn't it? It certainly would have been, yes, Your Honor. So the government didn't suggest to the district court that they cross-reference the terms used in the condition to 18 U.S.C.? No, Your Honor. We certainly did not do that. Why not? That would have been just a mistake on my part, Your Honor. I'm not trying to crucify you, Counsel. This didn't occur to us? It didn't. And the reason, I think, just so that the courts were – I mean, I know there's no intent to hide that in any way from the court by any means. But what our position was is that this condition has already been the sexually oriented and sexually stimulating was already approved of in the B case. Now, that was a First Amendment context, which is different than the vagueness. But there is in the Antelope decision, I believe, where there's a discussion that the Ninth Circuit wouldn't have approved of that if it was a vague or ambiguous term. And I want to emphasize for the court that that was in the First Amendment context. But certainly that was a condition that had been approved. And what Judge Haddon tried to do is to carve off the problematic term, which was pornographic. And when he did that, what he did is he focused on sexually stimulating, sexually oriented, a term that had already been approved of in the B case, albeit a different context. And as applied to Mr. Lastar, a man who's committed a heinous sex crime, he said that Miss March and Crazy Girls qualified. And then there's ample evidence in the record to show what actually existed on those movies. So the practical point of this case, just so that the court's aware, is that there were concerns from the beginning about Mr. Lastar that he committed this heinous sex crime, and then he is living next to children. So when the probation officer shows up and he finds Miss March unrated in the DVD player, that obviously caused some concerns for him. Then the request was made to have any other pornography produced, and Mr. Lastar produced Crazy Girls. One of the things that you can see in the record is that... Do we know what the question was? I don't think that you know exactly what the question was. Do you have anything more like this? I believe it was he asked if there's any more pornography, and that's what probation officer Ray Antoncin testified to. So they were assuming that the first movie was, in fact, pornography? I believe that they used the term pornography. We know that that's incorrect. What Judge Haddon focused on was sexually stimulating or sexually oriented. As Mr. Ness referenced to the court, Mr. Lastar denied that it was pornography. I don't even want to get into whether or not Miss March or Crazy Girls is pornography because the court's already held that that is a vague term. We are and should be sympathetic to imposing conditions and to give the district court some latitude and for sure triggers to deviant behavior of any kind are something that a district court can legitimately deal with. In the case of someone who's abused alcohol or drugs, for example, a condition can be don't go to bars, which is perfectly legal for other folks to do. Don't sit at home alone with a refrigerator full of beer. Don't buy alcohol, et cetera. But that at least provides some notice to the individual as to what's involved. And I think that the one thing, because I've thought about that question as well, and what we have is here we have clear movies that fall within that sexual stimulation and sexually oriented. The probation officer sat down, discussed these conditions with the defendant, and then he was found in possession of them. The other thing that I think is important to realize is that we actually have a violation of two conditions here. We have a violation of the sex offender treatment program and the policies, and then we also have a violation of the possession of the sexually stimulating or sexually oriented material. The sex offender therapist sat people down in groups and also discussed the policies of the sex offender treatment program. So Mr. Lastar would have been made aware of that, and the court can see in the record on page 77 that Mr. Lastar would clearly have known that the movie, and I believe she referred to Crazy Girls. When were these conditions imposed? Which conditions, Your Honor? The one we've been talking about. Oh, the... Sexually explicit materials or whatever. Yes, I believe it was in 2002 was when it was imposed prior to the antelope case. Okay. And so then what we have, and the only reason why I ask that is that after Mr. Lastar was released on supervised release, that's when the conditions of his sex offender treatment program were provided. That's also prior to United States v. King, right? That's correct. Okay. Yes. What about the new condition? Yes, the new condition is much more narrow. It has been consistent with certain precedent at this point, and so you'll see that I believe it says sexually explicit material, and I could provide that, and it refers to the definition. So for now, Mr. Lastar will be very clear about what is prohibited from him. Unless the Court has any other questions, that concludes the government's presentation. Thank you very much. Thank you for your time, Your Honors. Thank you. Mr. Ness, I think you have about a minute left. Thank you, Judge. I guess first thing, counsel, I just made reference to an argument made in a brief that somehow Mr. Lastar had waived his right to contest the facial vagueness of the condition here. I just don't think that's the long-range circuit, and I think that's pretty clear. Didn't Judge Haddon impose additional conditions that sort of incorporate the same issue here at the end of the hearing? Did he modify the condition in any way or just reimpose it? Oh, with the new judgment after? Yeah. He did. In fact, I was worried. I looked into those, and he modified the condition significantly. In fact, referenced the statute that Judge Hawkins just mentioned. So that essentially allows him to challenge it now, does it not? Challenge? The new conditions that were imposed on him? Yes, yes. I didn't hear the government say no, although I have read the argument in a brief. No, their argument was that somehow he waived his right on the condition that he was revoked on, and that's where I just think the Ninth Circuit law is directly against him. The two conditions that were violated, the second condition was that he was – that argument is very circular because he was terminated from sex offender treatment because, as she put in her letter, he possessed pornography, he denied his pornography, and he was arrested by probation violation, which was possession of pornography. But she also testified, as I think counsel just argued, that in group therapy sessions, they spend a lot of time talking about, you know, what you are and are not allowed to see and do and possess while you're in the program. Didn't she say that? She did say that, but when you read cross-examination of her, she couldn't give me a clear example of what she was talking about, of what she meant by questionable. The closest she came was based on everything we talked about. He knew that he wasn't supposed to say that, but that's a conclusion. That's a conclusion, and it was basically her decision, which, of course, brings us to a problem of delegating this to – Well, you're not suggesting that Judge Haddon has to sit in the therapy sessions and oversee – No, no, not at all, and I made that clear in my brief. You know, certainly she can have some certain ground rules, but here she's deciding what he can read, what he can look at, and even her standards, she couldn't articulate them. Okay, Mr. Nash, I think we have the argument in hand. Thank you both for the argument. The case that's argued is submitted.
judges: Whyte, Hawkins, Tallman